IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARIBBEAN PETROLEUM LP,        )<br>                               )<br>          Debtor,             )<br>_____)<br>                               )<br>HERNAN SERRANO,                )<br>                               )<br>          Plaintiff,          )<br>                               )<br>     v.                        )<br>                               )<br>RAM ZEEVI,                     )<br>                               )<br>          Defendant.           ) | Chapter 11<br>Bankruptcy Case No. 01-11657<br>Bk. Adv. 03-60026<br>(Jointly Administered)<br><br><br><br><br><br>Civ. No. 04-443-SLR |

---

Laura Davis Jones, Esquire and Bruce Grohsgal, Esquire of Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C., Wilmington, Delaware.  Andrew Caine, Esquire and J. Rudy Freeman, Esquire of Pachulski, Stand, Ziehl, Young, Jones & Weintraub, Los Angeles, California.  Counsel for Plaintiff.

William D. Sullivan, Esquire and Charles J. Brown, III, Esquire of Elzufon Austin Reardon Tarlov & Mondell, P.A., Wilmington, Delaware.  Stephen F. Gordon, Esquire and Leslie F. Su, Esquire of Gordon Haley LLP, Boston, Massachusetts.  Counsel for Defendant.

---

**MEMORANDUM OPINION**

Dated: March 31, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

I. INTRODUCTION

On December 13, 2001, debtor Caribbean Petroleum LP ("Caribbean") filed a voluntary petition for relief under chapter 11 of the United State Bankruptcy Code.[1] On March 13, 2003, the bankruptcy court entered an order confirming Caribbean's fourth amended joint plan of reorganization (the "Plan").

On December 16, 2003, plaintiff Hernan Serrano, as Trustee of the Caribbean Petroleum Creditors' Trust (the "Creditors' Trust"), filed an action in the bankruptcy court to avoid a transfer of funds from Caribbean to defendant Ram Zeevi prior to the bankruptcy petition.

On June 24, 2004, this action was withdrawn from the bankruptcy court. (D.I. 3)  This court has jurisdiction over actions arising out of chapter 11 of the bankruptcy code pursuant to 28 U.S.C. § 1334(a).  Pending before this court is defendant's motion to dismiss plaintiff's action to avoid the alleged fraudulent transfer.  (Bk. Adv. 03-60026, D.I. 6)

---

[1] This petition was also filed by Caribbean Oil LP ("Caribbean Oil"), Caribbean Petroleum Refining LP ("CPR"), Gulf Petroleum (Puerto Rico) Corporation ("Gulf Petroleum"), and Caribbean Petroleum Corporation ("CPC").

## II.  BACKGROUND

Debtor Carribean was the owner and controller of refinery, blending and dock terminal facilities for a network of gasoline service stations.  (Bk. Adv. 03-60026, D.I. 7 at 2)  As a result, Carribean imported, refined, blended, delivered, distributed, or exported petroleum, its derivatives and ancillary products within and outside Puerto Rico.  (Id.)  Carribean is controlled by Gad Zeevi, defendant's father.  (Id.)  Defendant is the managing director of CPC and the owner of Oil Investments Consolidated, Inc. ("OIC").  (Id.)

In December 1992, CPC sold nine gasoline service stations in Puerto Rico to OIC for $4.4 million.  (Id. at 5)  The sale agreement gave CPC the right of first refusal to repurchase the service stations.  (Id.)  In 1998, Carribean entered into an agreement to purchase the nine service stations, plus one additional service station acquired by OIC from a "non-Zeevi" company, for $5.6 million.  (Id.)  Part of the purchase agreement paid defendant, individually, $1.3 million in exchange for a five year noncompete agreement (the "noncompete agreement").  (Id.)  Plaintiff asserts that Carribean received no consideration for the noncompete agreement because defendant was not a competitor of Carribean, nor was there any indication that he intended to be in the future.  (Id. at 5-6)

In 2003, the bankruptcy court approved the Plan.  Part of

2

the Plan created the Creditors' Trust, to which the creditors assigned their rights to bring certain claims. (Bk. Adv. 03-60026, D.I. 6 at A-14)

### III. STANDARD OF REVIEW

Because the parties have referred to matters outside the pleadings, defendant's motion to dismiss shall be treated as a motion for summary judgment. See Fed. R. Civ. P. 12(b)(6). A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R.

Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV.  DISCUSSION

The question presented is whether defendant is an "Insider" or a "Non-Insider" under § 5.6 of the Plan, which provides that:

> (i) the Non-Insider Claims shall automatically be deemed transferred to the Creditors' Trust; and (ii) the Insider Claims shall automatically be deemed transferred to the Creditors' Trust . . . provided that the Creditors' Trust shall pursue the Insider Claims only in the event that the Debtors fail to pay the Unsecured Payment Obligations . . . .

(Id.) "Insider Claims" are defined by the Plan as "Avoidance Actions[2] of the Debtors, if any, against FOI, [Oil Resources,

---

[2]"Avoidance Actions" were defined as "[c]auses of Action arising or held by the Debtors under Sections 502, 510, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or under related

4

Inc.] and Mr. Gad Zeevi . . . ." (Bk. Adv. 03-60026, D.I. 6 at A-8) "Non-Insider Claims" are defined as "Avoidance Actions of the Debtors against Person other than Insiders." The Plan does not define "Insiders," but a "term used [and] not defined [by the Plan], which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code." (Id. at A-2) The bankruptcy code's definition of "Insider" includes: (1) directors of debtor, and their relatives; (2) officers of debtor, and their relatives; (3) people in control of debtor, and their relatives; (4) general partners, if the debtor is a partnership, and their relatives; and (5) partnerships in which the debtor is a partner. See 11 U.S.C. § 101(31).

By its terms, the Plan incorporates the bankruptcy code's definition for "Insider." Under this definition, defendant is an "Insider," as he is the son of an officer, director or controlling manager of Carribean. However, pursuant to § 5.6 of the Plan, the only "Insiders" subject to suit under the Plan are FOI, Oil Resources, Inc. and Gad Zeevi. I conclude, therefore, that the Creditors' Trust does not have authority to bring an avoidance action against defendant.[3]

---

state or federal statutes and common law, including fraudulent transfer laws." (Bk. Adv. 03-60026, D.I. 6 at A-3)

[3]Plaintiff requested an opportunity to conduct discovery before an order dismissing the case was entered. However, because this court's opinion is based on the unambiguous language of the Plan, extrinsic evidence is not relevant.

5

## V.   CONCLUSION

Therefore, for the reasons stated, defendant's motion for summary judgment (Bk. Adv. 60026, D.I. 6) is granted. An order consistent with this memorandum opinion shall issue.